STATE *use of* DUVALL *vs.* SNOWDEN.—*June,* 1836.

When an executor gives bond under the act of 1798, ch. 101, sub. ch. 14, sec. 6 and 7, to pay all debts of, and claims against the deceased, and all damages which shall be recovered against him as executor, and also all legacies which shall be bequeathed by the will of his testator—he is discharged from the obligation to exhibit any inventory or account; is answerable absolutely for all the debts and legacies of his testator, with or without assets.

In an action upon such a bond, the plaintiff need not show assets, nor a compliance with the act of 1720, ch. 24, and the surety is equally bound with the principal, to the equitable plaintiff claiming for a debt due by the testator of the principal, and assigning the non-payment of that only, as the breach of the condition.

APPEAL from *Prince George's* county court.

This was an action of *Debt,* brought by the appellant, against the appellee, as surety of one *Richard P. Snowden,* executor of *Rachael Snowden.*

The condition of the bond was, " to pay all just debts of, and claims against the said deceased, and all damages which shall be recovered against him as executor, and also all legacies which shall be bequeathed by the will of the said *Rachael Snowden.*"

To the declaration, which was in common form, the defendant pleaded performance, and the plaintiff replied, setting out a debt due to the party, for whose use the suit was instituted, upon the contract of the testatrix.

The defendant demurred to the replication; the plaintiff joined in the demurrer, and the judgment on the demurrer being for the defendant, the plaintiff brought the record upon appeal before the Court of Appeals.

The case was argued before BUCHANAN, Ch. J. and STEPHEN, DORSEY, and SPENCE, Judges.

PINKNEY and TUCK, for the appellant contended.

1. That by the true construction of the acts of 1720, ch. 24, and 1798, ch. 101, sub. ch. 14, sec. 6, 7, where an executor gives bond for the payment of the debts of the testator, it is not incumbent upon a creditor of the deceased, to sue and obtain judgment against the executor, on the contract of the testator; or to issue a *fi. fa.* and obtain a return of *nulla bona;* but suit may be immediately instituted on such bond, for recovery of the claim against the testator. Such was clearly the intention of the Legislature, which is to be chiefly regarded in the construction of their language. *State use, &c. vs. Boyd,* 2 *Gill. and John.* 365.

If it be necessary that creditors should proceed first in the ordinary way before suing the bond, then the situation of legatees, is better than that of creditors; because the bond being evidence of the assent of the executor to the legacy, the legatee is at liberty to sue the bond at once.

But the liability of the bond to immediate suit, without any preliminary proceedings has been decided. *Hamilton vs. State use of Jameson*, 3 *Harr. and Johns.* 503.

2. But whatever may be thought of the first question, the judgment on the pleadings should have been for the plaintiff. *Iglehart vs. State use Mackubin*, 2 *Gill and Johns.* 245.

ALEXANDER for the appellee.

1. Before the bond which was given in this case could be sued, a judgment should have been recovered on the original cause of action against the executor as such—unless this is necessary, the property of a surety may in the first instance be taken for the debts of the deceased, contrary to the spirit of the act of 1720, ch. 24. These bonds though created by the act of 1798, are nevertheless administration bonds within the meaning of the act of 1720. *State use &c. vs. Boyd*, 2 *Gill and Johns.* 365. The preamble to the act of 1720, ch. 24, shows that it was not usual to sue the bonds before getting a judgment against the executor, as such, though the issuing of process may have been dispensed with. But the language of the act of 1798, itself, shows that suits are to be brought against the executor in that capacity, though the bond being an admission of assets, the judgment will bind his own property.

2. It is said however, that we ought to have rejoined, so that the plaintiff in his surrejoinder might have shown a compliance with the act of 1720. There can be nothing in this objection. The plaintiff should have shown his right to recover in his replication, and it is his own fault, if he has omitted to do so.

STEPHEN, Judge, delivered the opinion of the court.

We think the court below manifestly erred in the decision pronounced by them in this cause.

The ground of the error of that opinion seems to have been, in ascribing to the bond upon which this suit was instituted, all the qualities and attributes of the ordinary executorial bond required by the testamentary laws of this state. It is true, this court have said, that any bond that is required by law to be given by an executor or administrator, by reason of the assumed representative character of executor or administrator, and to secure the payment of debts and legacies, or the faithful administration of assets, is a testamentary, or administration bond as the case may be ; but at the same time, they have also said, that by giving such a bond, in lieu of the ordinary testamentary bond, an executor is discharged from the obligation to exhibit any inventory or account, and is rendered answerable for all the debts and legacies, with or without assets coming to his hands. By entering into such a bond he becomes absolutely bound for the payment of all the debts of the testator, in the same manner as if they were debts due from him, in his personal, or individual capacity, and the bond differs in nothing, from a bond given for the payment of his own debts, except in that feature of it, which limits its operation, to debts, claims, and demands recovered against him as executor ; his liability under it being confined to claims and demands against his testator, and damages recovered against him as executor, and not extending to debts, or demands due from him in his private, or individual right. In the recovery of his claim by suit, upon such a bond a creditor is not bound to shew assets. The want of them would be no defence to the action, if relied upon as such by the executor, and whether they ever existed, or not, is a question with which the creditor has no concern.

Under this aspect of the case, it is difficult to conceive, why a compliance with the provisions of the act of 1720, ch. 24, should be requisite, as a necessary preliminary to the legal liability of the surety in such bond. The respon-

sibility of his principal incurred under it, is not a qualified one, for the due and legal administration of the assets, but is an absolute undertaking to pay all debts, claims, and damages, recovered against him as executor, whether assets ever came to his hands or not. For the faithful performance of this duty, his surety is equally bound with himself. He has no right to say to a creditor, you must first resort to the executor, and endeavour to recover your claim out of the assets of the deceased, before you can seek to enforce the payment of it by me, in virtue of my assumed responsibility; his principal being unconditionally and absolutely bound, his liability as surety, so far as the rights of a creditor are concerned, must partake of the same character.

If for so plain, and self-evident a principle, an authority be wanting, it may be found in the 1*st Law Lib.* 41, and 53, where it is said, " although the surety is not obliged to a greater extent than his principal, he is understood to be obliged to the same extent, unless he has expressly limited his obligation." And " if the engagement of surety is general, the surety is understood to be obliged to the same extent as the principal."

The responsibility of the surety therefore, being the same as that of the principal, and the principal being absolutely bound to pay without reference to the question of assets, we think that the court below erred in giving judgment upon the demurrer in favour of the defendant and reverse their judgment.

JUDGMENT REVERSED.